IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH VERLYN GUTHRIE, | § | |
| TDCJ No. 2168413, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:21-cv-1257-C-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Petitioner Joseph Verlyn Guthrie was convicted of aggravated assault with a deadly weapon and sentenced to 15 years of imprisonment. *See State v. Guthrie*, No. F50778 (413th Dist. Ct., Johnson Cnty., Tex. Nov. 14, 2017) [Dkt. No. 17-1 at 7-17]. His criminal judgment was affirmed on appeal. *See Guthrie v. State*, No. 10-17-00392-CR, 2019 WL 637966 (Tex. App. – Waco Feb. 13, 2019, pet. ref'd) [Dkt. No. 17-1 at 20-24]. And the Texas Court of Criminal Appeals (the CCA) refused Guthrie's petition for discretionary review (PDR). *See Guthrie v. State*, PD-0256-19 (Tex. Crim. App. June 12, 2019 [Dkt. No. 17-1 at 26].

The CCA then denied his state habeas application without written order. *See Ex parte Guthrie*, WR-91,452-01, 2020 WL 8079761 (Tex. Crim. App. Dec. 16, 2020) [Dkt. No. 17-1 at 28]. After that, Guthrie filed a *pro se* 28 U.S.C. § 2254 application for a writ of habeas corpus no sooner than May 19, 2021, the date on which he appears

to certify that he placed it in the prison mailing system.[1] *See* Dkt. No. 3 at 10, 11.

Senior United States District Judge Sam R. Cummings referred the habeas application to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. It was served. *See* Dkt. No. 5. The State responded, arguing that the petition should be dismissed as time barred under the limitations provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* Dkt. Nos. 8, 17. And Guthrie replied. *See* Dkt. No. 18.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss the federal habeas petition with prejudice as time barred.

**Legal Standards**

"AEDPA in 1996 introduced both 'simple logic' to the federal habeas landscape and uniform rules for federal courts to apply." *Wallace v. Mississippi*, ___ F.4th ___, No. 20-60098, 2022 WL 3150330, at *6 (5th Cir. Aug. 8, 2022) (quoting *Smith v. Titus*, 141 S. Ct. 982, 987 (2021) (Sotomayor, J., dissenting from denial of cert.), then citing *Day v. McDonough*, 547 U.S. 198, 202 n.1 (2006)).

"Namely, it implemented a host of greatly needed procedural requirements for

---

[1] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

petitioners seeking habeas relief." *Id.* (citing *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) ("In many ways, the statute represented a sea change in federal habeas law.")).

One such requirement is "the one-year period for an individual in custody pursuant to a state-court judgment to file a § 2254 petition for habeas relief" that "begins running from the latest of four events." *Id.* at *10 (citing 28 U.S.C. § 2244(d)):

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 799 (5th Cir. 2002)

(citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 577 U.S. at 257.[2]

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

---

[2] *See, e.g., Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citation omitted)).

And a showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).[3]

## Analysis

The timeliness of most Section 2254 applications is determined under Section 2244(d)(1)(A), based on the date on which the judgment became final. A state criminal judgment becomes final under AEDPA "when there is no more 'availability of direct appeal to the state courts.'" *Frosch v. Thaler*, No. 2:12-cv-231, 2013 WL 271423, at *1 (N.D. Tex. Jan. 3, 2013) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)), *rec. adopted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013).

This availability includes review by the United States Supreme Court under

---

[3] *See also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.'" (quoting *Schlup*, 513 U.S. at 324, 327)).

28 U.S.C. § 1257(a). *See, e.g.*, *Wallace*, 2022 WL 3150330, at *11 ("[T]he [Supreme] Court may review a final state-court judgment if, *inter alia*, it is "rendered by the highest court of a State in which a decision could be had."' And "AEDPA's finality provision accounting for 'time for seeking such review' includes the 90-day period for filing a petition for writ of certiorari." (citations and emphasis omitted)).

Because Guthrie did not petition the Supreme Court for certiorari review, the applicable state judgment became final under AEDPA no later than September 10, 2019 – 90 days after the CCA refused the PDR (on June 12, 2019). *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (observing that, if a petitioner halts the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires" and noting that the Supreme Court allows 90 days for filing a petition for certiorari following the entry of judgment); SUP. CT. R. 13.

And the period in which Guthrie sought state habeas relief, from the filing of his state application (in the state trial court) to its denial by the CCA, statutorily tolled the limitations period. The CCA denied the application on December 16, 2020. *Compare* Dkt. No. 3 at 4 (Guthrie's Section 2254 petition), *with, e.g.*, Dkt. No. 17-1 at 28 (a copy of the CCA's denial in the record). But the record is less certain as to when Guthrie filed it.

In his Section 2254 petition, Guthrie alleges that he filed the state application on July 13, 2020. *See* Dkt. No. 3 at 4. But the State relies on June 29, 2020 as the application's filing date, the date on which it was filed in the state habeas trial court. *See* Dkt. No. 17 at 3 & n.1 (citing Dkt. No. 8-3 at 2, 4).

The State explains that, although Guthrie dated the state application on October 11, 2019 and indicates that he is incarcerated at the Bradshaw State Jail, *see id.*; Dkt. No. 17-1 at 18; Dkt. No. 8-23 at 45, on the same page he also indicates that he is "now at" the Luther Unit, *id.* – a transfer that occurred on November 6, 2019, *see* Dkt. No. 17 at 3 n.1; Dkt. No. 17-2 at 2. And the State could not verify – even after attempting to obtain prison mail logs from the Luther Unit – the date on which Guthrie placed the application in the prison mail system. *See id.* (citing Dkt. No. 8-23 at 56); *see also* Dkt. No. 17-2 (mail log affidavits).

Guthrie does not assert on reply that the State's assessment as to the applicable filing date is in error. *See* Dkt. No. 18.

And here, there is no basis to give Guthrie the benefit of the prison mailbox rule as to the filing of his state habeas application.

"[T]he question of 'when a state application is properly filed is a question of state law.'" *Bradshaw v. Davis*, 736 F. App'x 457, 461 (5th Cir. 2018) (per curiam) (quoting *Richards v. Thaler*, 710 F.3d 573, 577 (5th Cir. 2013)). And, although Texas has adopted the prison mailbox rule, *see generally Campbell v. State*, 320 S.W.3d 338 (Tex. Crim. App. 2010), this record contains no evidence that Guthrie has otherwise complied with the applicable filing rules, *see Anderson v. State*, 625 S.W.3d 128, 133 (Tex. Crim. App. 2021) (In the cases in which the prison mailbox rule was applied, "the issue was error outside of the inmate's control: either clerical or postal system error, and the equitable decision was made that, since the *pro se* litigant complied with the applicable rules, there should be a tolling of the jurisdictional timeline. The

error here is different. In this case, the delay in the receipt of Appellant's notice of appeal by the proper clerk was caused by Appellant's failure to comply with [Texas Rule of Appellate Procedure] 9.2(b). Our holding in *Campbell* incorporated the prisoner mailbox rule into Rule 9.2; it did not abolish the inmate's compliance with the rule."); *White v. Dir., TDCJ-CID*, No. 6:11cv90, 2014 WL 468233, at *1 (E.D. Tex. Feb. 3, 2014) ("[T]he fact remains that there is no evidence of actual mailing on January 26, 2010[, the date typed on the cover letter]. Rule 9.2(b) itself lists the acceptable proof of mailing, including a legible postmark by the U.S. Postal Service; a receipt for registered or certified mail; a certificate of mailing by the U.S. Postal Service; or a receipt endorsed by a commercial delivery service. No such proof appears in the record and does not apply here. Although a court may consider 'other proof,' there is no other proof here, only a typed letter bearing a typed date on it, but absent any postmark or other support." (citations omitted)).

So, crediting Guthrie the 171 days the limitations period was tolled (from June 29, 2020 to December 16, 2020), his Section 2254 petition would have been timely if it was filed by Monday, March 1, 2021 (September 10, 2020 + 171 days = Sunday, February 28, 2021). *See* FED. R. CIV. P. 6(a)(1)(C). His federal habeas petition, filed no sooner than May 19, 2021, is therefore some 79 days too late and should be denied as time barred absent statutory or equitable tolling of the limitations period or establishment of actual innocence.

Guthrie fails to explain how another provision of Section 2244(d)(1) could apply here and does not advance a claim of tolling under the narrow actual innocence

gateway, but he does argue that the limitations period should be equitably tolled because he had inadequate access to the Luther Unit's law library from March 30, 2020 to November 2, 2020 (due to the pandemic) and because the alternative means to access the courts put into place by Texas prison officials during this time period was inadequate. *See* Dkt. No. 18.

First, a "conclusory claim that [a petitioner] did not have adequate access to a law library does not show he is entitled to equitable tolling." *Zepeda v. Stephens*, No. 3:14-cv-2072-B, 2015 WL 105165, at *3 (N.D. Tex. Jan. 6, 2015). And, during the period in question, Guthrie was able to access the courts as shown by the filing of his state habeas application, an application that was still pending when the impediments alleged by Guthrie ended on November 2, 2020.

So Guthrie has not established that the extraordinary circumstance beyond his control that allegedly stood in his way actually prevented the timely filing of the federal habeas petition. *Cf. Winn v. Davis*, No. 3:16-cv-2361-N-BN, 2017 WL 5125898, at *4 (N.D. Tex. Sept. 21, 2017) ("Winn's claim of mental incompetency is conclusory. He has failed to provide the Court with evidence – or even alleged facts – to support his claim that a mental disability interfered with his ability to file a federal writ in a timely manner. That is, he has not shown that there is a 'causal connection between [his] mental illness and his failure to file a timely federal habeas petition.'" (quoting *Jones v. Stephens*, 541 F. App'x 499, 505 & n.34 (5th Cir. 2013) (per curiam); collecting cases)), *rec. accepted*, 2017 WL 5070422 (N.D. Tex. Nov. 3, 2017).

The Court should therefore dismiss the Section 2254 petition with prejudice as

time barred.

## Recommendation

The Court should dismiss Petitioner Joseph Verlyn Guthrie's 28 U.S.C. § 2254 habeas application with prejudice as time barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 16, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE